**In re TRAIL'S END LODGE, INC.,**
**d/b/a Sugarbush Associates**
**Company, Debtor.**

**Bankruptcy No. 84–120.**

United States Bankruptcy Court,
D. Vermont.

Nov. 19, 1985.

E. Patrick Burke, Rutland, Vt., for Chittenden Trust Co.

Peter J. DesMeules, Norwich, Vt., for Summit Ass'n.

Raymond Obuchowski, Barre, Vt., for debtor Trail's End Lodge, Inc.

Craig Weatherly, Burlington, Vt., for Sugarbush Valley, Inc.

## FINDINGS AND ORDER

FRANCIS G. CONRAD, Bankruptcy Judge.

This matter is before the Court on debtor's motion dated August 2, 1985 requesting reconsideration of the Court's memorandum and Order dated July 29, 1985 wherein the Court sustained the objections of a creditor to the debtor's third amended plan of reorganization. The Clerk by written Notice of Hearing to all parties in interest set debtor's F.R.Civ.P. 60(b)(6) motion for hearing on August 21, 1985. On August 15, 1985, Summit Association (the Homeowners), filed a motion to reconsider memorandum and Order dated July 29, 1985. The Court joined this motion with that of debtor.

For the reasons discussed herein, debtor's motion and that of the Homeowners to reconsider memorandum and Order dated July 29, 1985, sustaining objection of Sugarbush Valley, Inc. (SVI) to confirmation of debtor's third amended Plan of Reorganization, are DENIED.

Debtor, Trail's End Lodge, Inc. (d/b/a Sugarbush Associates Company), filed a petition for relief on July 13, 1984 under Chapter 11. The debtor is engaged in the development, selling, and leasing of condominiums. This description of debtor is sufficient to understand its business operation. For a more detailed factual background on the debtor, see *In re Trail's End Lodge, Inc.*, 45 B.R. 597 (Bkrtcy.D.Vt.1985).

Over the course of its reorganization, debtor filed several disclosure statements and plans of reorganization. After several hearings, this Court on May 24, 1985 issued an Order Approving the Disclosure Statement and set June 26, 1985 for the hearing on plan confirmation. We set June 21, 1985 as the last day for filing objections to confirmation of the plan and as the last day for filing written acceptance or rejection of the plan. A copy of the Order was docketed as mailed to the attorney for the debtor on May 24, 1985.

On June 21, 1985 one rejection of the plan and three acceptances were filed with the Clerk of the Court. On June 24, 1985 SVI filed an objection to confirmation of the plan and a ballot of rejection. The filings were three days outside the time provided by the May 24, 1985 Order setting the time for objections and ballots. Two of the days were a Saturday and a Sunday.

On June 25, 1985, the debtor filed the appropriate report of ballots for accepting or rejecting Amended Plan including therein a paragraph 7 which recites the following:

7. It is further noted that Sugarbush Valley, Inc. "deposited in the United States mail a ballot on June 20, 1985, however, such ballot was not filed with the Court on June 21, 1985, as such filing was required by the Court approving the disclosure statement and setting a time for balloting, and the debtor is unable to advise as to the nature of the ballot in that it did not receive a copy of the same."

This Court, after notice and hearing, on July 29, 1985, Judge Charles J. Marro presiding, entered a memorandum and Order sustaining SVI's objection to the plan.

The Order is set out herein:

## MEMORANDUM AND ORDER

The matter before the court is the objection of Sugarbush Valley, Inc. to confirmation of the amended reorganization plan of Trails End Lodge, Inc.

Code Section 1129(a) provides in relevant part,

The court shall confirm a plan only if . . .

(11) Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor . . . unless such liquidation or reorganization is proposed in the plan.

Code Section 1129(a)(11) contains the feasibility standards for confirmation of a plan. The provision requires, a determination by the court that implementation of a proposed plan reasonably would take place following confirmation. See House Report No. 595, 95th Cong., 1st Sess. 413 (1977); Senate Report No. 989, 95th Cong., 2d Sess. 128 (1978), U.S.Cong. & Admin.News (1978), pp. 5787, 5914, 6369.

In view of the feasibility requirement imposed by Code Section 1129(a)(11), the debtor's amended reorganization plan is not susceptible of confirmation by the court. The debtor presented no evidence at hearing to establish that the plan is viable in keeping with the § 1129(a)(11) standards ingredient to confirmation. The records in the case, and the plan itself, counsel that implementation as provided in the plan reasonably would not take place following confirmation. Specifically, the plan is underfunded, visionary, impractical. See In re Kors, 13 B.R. 676, 680 (Bkrtcy.D.Vt.1981) ("speculative" plan does not merit consideration by the court).

No infusion of fresh money working capital is provided for in the plan, when, historically, the debtor's disbursements have consistently exceeded revenues resulting in negative cash flow throughout this proceeding. The asset sales contemplated to fund the plan would have to occur within the near future and yield top dollar in order for implementation of the plan to take place. During the pendency of this proceeding, the debtor has demonstrated its inability to sell the contemplated assets in the current market. The debtor has established no basis on which the court reasonably may find that

the debtor, to fund the plan, is positioned to sell soon and at a premium the very assets it has been unable to dispose of for less than top dollar during the course of this proceeding.

The plan contemplates that the debtor will remedy for $40,000 or less certain environmental engineering defects concerning which, prepetition, a money judgment issued against the debtor for $178,000. However, the debtor has established no basis on which the court reasonably may find that the debtor is positioned to correct the environmental engineering for $40,000 so as to realize the plan.

The court cannot confirm the debtor's reorganization plan for the reason that the plan does not appear feasible.

### ORDER

NOW, THEREFORE, upon the foregoing, it is ordered that the objection of Sugarbush Valley, Inc. to confirmation of the third amended plan of reorganization of Trails End Lodge, Inc., is SUSTAINED.

Dated: July 29, 1985

/s/ Charles J. Marro
U.S. Bankruptcy Judge

The debtor, ever wary of its procedural rights, filed on August 5, 1985 a Bankruptcy Rule 8002(c) motion to extend time for filing Notice of Appeal of the July 29, 1985 Memorandum and Order, which we granted orally, without necessity of hearing, on August 8, 1985 and with written notice and Order to appropriate parties on August 12, 1985. The Order granting the motion extended the time for filing an appeal to August 19, 1985. No appeal of the July 29, 1985 Memorandum and Order has been filed. On August 9, 1985 notice was mailed to all parties setting August 21, 1985 as the date to hear debtor's motion to reconsider memorandum and Order of July 29, 1985 sustaining objections of Sugarbush Valley, Inc. to confirmation of debtor's third amended Plan of Reorganization. Shortly thereafter, the Homeowners joined in the debtor's motion.

As grounds for its motion to reconsider memorandum and Order dated July 29, 1985, debtor asserts in pertinent parts of its motion:

(3) That as of June 21, 1985, all ballots returned and filed with the United States Bankruptcy Court indicated acceptance of the Debtor's plan of reorganization, and as of that date the objection of Sugarbush Valley, Inc., had not been timely filed.

(4) That at the hearing on June 26, 1985, the date of the hearing on confirmation of the Debtor's plan of reorganization, the Debtor did not present evidence regarding the feasibility of implementation of its plan of reorganization, the negotiations for a present sale of its assets, nor anticipated costs of remedying environmental defects, due to the fact there had been no timely filed objection for which a hearing was held upon, and general creditor concern at such hearing was in favor of confirmation of the plan.

(5) That if such Debtor had been advised that the Court was to consider the objection to confirmation untimely filed by Sugarbush Valley, Inc., that appropriate evidence would have been presented regarding the feasibility of the Debtor's amended plan of reorganization.

Debtor's amended plan provides for several classes of creditors. Class I, The Chittenden Trust Company (CTC), is secured and unimpaired. CTC did not ballot. Class II, a secured claim, the Homeowners, is unimpaired. The Homeowners accepted the plan. Because the first two classes are not impaired, their acceptance is presumed under 11 U.S.C. 1126(f).

Class III, under the amended plan, is unimpaired. Class III is deemed to accept under 11 U.S.C. § 1126(f). It comprises Emilio Ruberti (Ruberti), Vice President of debtor, an insider as defined in 11 U.S.C. 101(28)(B)(ii), and Taylored Meetings, Inc. (TMI). According to testimony adduced at the August 21, 1985 hearing on debtor's

motion to reconsider, TMI at the time of its incorporation was wholly owned by Noll Taylor, president of debtor, and a one-third (⅓) shareholder. While TMI is clearly an affiliate within the meaning of 11 U.S.C. § 101(2)(B), it is not an insider as defined in 11 U.S.C. § 101(28)(B)(ii). It is unfortunate that the Bankruptcy Code does not address what we perceive as clearly an insider relationship. The degree of affinity of TMI here, its Class II position, and that of Ruberti's is inherently suspect. Ruberti voted for acceptance and TMI did not vote (TMI's affirmative vote was filed out of time). It is not necessary for the Court to consider the issue of discriminatory treatment in this proceeding at this time. For the purposes of 11 U.S.C. § 1129(a)(10) Ruberti's vote for acceptance can not be determinative of acceptance, and TMI's "non-vote" need not be considered. See House Report No. 95–595, Cong., 1st Sess. 410 (1977) and Senate Report No. 95–989, 95th Cong., 2d Sess. 122 (1975).

In one of the several amended plans, creditor Warren Realty (WR) was included in Class V and was impaired. WR submitted a ballot which rejected the plan. On July 29, 1985, debtor amended its plan and moved WR from Class V to Class III. Subsequent to the August 21, 1985 hearing, WR indicated in correspondance to the Clerk of the Court that it had no objection to the plan based upon the withdrawal of objections by CTC as filed with this Court. The Court is interpreting this correspondance to also mean WR is changing its ballot on the amended plan to one of affirmation.

Class IV, unimpaired and consisting of debtor's secretary, Evelyn Bortz, an insider as defined in 11 U.S.C. § 101(28)(B)(ii), did not ballot. He is deemed to accept under 11 U.S.C. § 1126(f), although his ballot is not to be determinative of an acceptance, 11 U.S.C. § 1129(a)(10).

Finally, we come to Class V, the remaining creditors, all unsecured and all impaired under the plan. The class comprises six (6) creditors, the largest of which is SVI. One creditor, Sugarbush Village Real

Estate, balloted for the plan. Without SVI's ballot the requirement of 11 U.S.C. § 1129(a)(11) is satisfied.

■ As debtor asserts in its motion to reconsider, SVI's ballot of objection to the plan and objection to confirmation was indeed filed after the time set for filing by the Court. Debtor indicates in its Report on Ballots that SVI's ballot of rejection was mailed on June 20, 1985. SVI has, however, actively participated in this case and its proceedings. Debtor has been and is well aware of SVI's objections. Thus, we find that no substantial rights of the debtor have been affected by the late filing. The Court did order a fixed filing date for the filing of objections and thus Bankruptcy Rule 9006(e) cannot save the vote. The failure to receive one-day mail delivery within the State of Vermont is, however, excusable neglect within Bankruptcy Rule 9006(b)(1)(2). Pursuant to Bankruptcy Rule 9005, SVI's late-filed objection and ballot of rejection is again allowed and the ballot is again accepted.

Sufficient statutory ground has been found by this Court to deny confirmation of the plan. Because debtor may be able to structure a compromise from SVI and thus may technically be able to satisfy the statutory requirements of 11 U.S.C. § 1129(a)(10), judicial economy requires that we state all the material reasons why this amended plan cannot be confirmed.

■ We are of the opinion that we have an obligation to make a careful study of the plan and make an informed judgment as to whether the plan is in the best interest of the creditors. See *United Properties Incorporated v. Emporium Department Stores, Inc.*, 379 F.2d 55 (8th Cir.1967). Other Courts have held that "Even in the absence of creditor objections, the Court has an independent duty to determine that the confirmation requirements of 11 USC § 1129 are met." *In re Landscaping Services, Inc.*, 39 B.R. 588, 590 (Bkrtcy. E.D.N.C.1984). We hold that the Court has a mandatory duty to determine whether the plan has met all the requirements for confirmation with or without creditor participa-

tion, with or without creditor objection, and with or without creditor approval. This independent duty to review is derived from 11 U.S.C. § 105(a) and mandated by the language of 11 U.S.C. § 1129. Compare *In re Nolan Tool Company*, 50 B.R. 488 (Bkrtcy. W.D.Ark.1985); *In re Coastal Equities, Inc.*, 33 B.R. 898 (Bkrtcy.S.D.Cal.1983). Additionally no proponent of any plan or any argument should ever assume that because no objections are raised the plan will be reviewed in a cursory manner or not reviewed at all by the Court.

■ Debtor in its motion asserts that it did not present evidence regarding the plan and its constituent components because no objection had been filed. This reasoning is erroneous. The burden of showing that a plan satisfies 11 U.S.C. § 1129 is on the proponent. The burden is that of producing evidence, satisfactory to the Court, that the plan satisfies 11 U.S.C. § 1129. For a discussion of the burden required, see *Smith v. Hill*, 232 Mass. 188, 122 N.E. 310, 2 ALR 1667, aff'd 260 U.S. 592, 594, 43 S.Ct. 219, 67 L.Ed. 419 (1923). See generally *McCormick on Evidence*, 3rd ed., § 336 (1984); *Evidence*, 29 Am.Jur.2d § 123.

In its motion to reconsider, debtor asserts that if it had been advised to consider the objection to confirmation it would have presented appropriate evidence regarding its plan. The debtor was allowed to do so at the hearing on August 21, 1985 when it presented evidence, through Edwin F. Boitz an officer and shareholder of the corporation, as to the feasibility of its plan of reorganization, negotiations for a present sale of its assets, and the anticipated costs of remedying environmental defects.

The evidence showed the following:

1) Negotiations have taken place for the sale of six (6) units as a package.
2) No sales of the eight (8) units have been made since January 1, 1985.
3) The sale of unit 48 fell through.
4) Negotiations on unit 44 are going on with a friend and three other individuals in New Jersey.
5) Unit 44, after sale, may show net proceeds of $70,000.00.
6) There is no money readily available to complete the environmental work required by 11 USC 6001 et seq., known popularly as Act 250.
7) Mr. Boitz would not modify the plan and personally contribute additional capital unless other principals contribute.
8) Mr. Boitz estimates the cost to complete the project is $40,000.00.
9) Mr. Boitz's estimate was made in consultation with an engineer and an attorney.
10) The report of the engineer estimates the cost to complete the project is $106,811.00.
11) The Vermont Superior Court in *Sugarbush Valley, Inc. v. Sugarbush Associates et al*, Docket No. S208–82 WNC and S259–82 WNC, estimates the cost to complete the project is $173,167.00. This estimate was contained in the Court Order issued on May 23, 1984.
12) Mr. Boitz testified that much of the work in the Court Order had been completed. The cost of this work according to the engineer's report totaled $225.00.
13) The "estimate for remedial work" by the engineer disclaims the ability to give a reasonable estimate on corrections to plumbing.
14) No estimate was provided for certain ditch work on the north side as required by the Act 250 permit.
15) Mr. Boitz indicated he has no real understanding as to what needs to be done under Act 250.

■ The facts as presented to this Court lead to one conclusion: The plan is not feasible within the meaning of 11 U.S.C. § 1129(a)(11) and is not susceptible of confirmation by the Court. The purpose of 11 U.S.C. § 1129(a)(11) is to prevent confirmation of visionary schemes which promise creditors more under a proposed plan than the debtor can possibly attain after confir-

mation. *In the Matter of Pizza of Hawaii, Inc.*, 761 F.2d 1374, 12 C.B.C.2d 1227, 1237 (9th Cir.1985).

■ The Court views the word feasible within its ordinary meaning that something is capable of being done or carried out; capable of being used or dealt with successfully; suitable; reasonable; likely. It does not connote absolute insurance of success but only reasonable assurance of success. *Webster's New Collegiate Dictionary*, 1979. (Compare *In re Waern Building Corporation*, 145 F.2d 584, 588 (7th Cir. 1944). We cannot confirm debtor's amended plan and overturn Judge Marro's Order of July 29, 1985 because an analysis of it and the testimony of its officer indicate to us that debtor has no understanding of the cost to complete the project or what has to be done to satisfy Vermont's Act 250, what units will be sold in the near future, and generally, the critical future events within the plan.

Debtor believes, notwithstanding the financial history of the enterprise, that it will somehow sell its eight (8) units for $800,000.00 (a unit price of $100,000.00). At page 13 of its amended disclosure statement debtor admits it could not sell seven (7) of its units in a package deal at a calculated unit price of $85,714.00. At the August 21, 1985 hearing, debtor's officer indicated negotiations were being conducted for a package sale of six (6) units, but no price was mentioned, only that negotiations were going on. All of the foregoing indicates a demonstrated inability on the part of the debtor to sell its assets in the present real estate market, and thus, an inability to effectuate a plan.

What the debtor has shown to the Court is that the plan is underfunded, visionary, and impractical. *In re Trial's End Lodge, Inc.*, 53 B.R. 221 (Bkrtcy.D.Vt.1985). This Court cannot confirm such a plan. See *In re Re Kors*, 13 B.R. 676 (Bkrtcy.D.Vt.1981).

Debtor's motion to reconsider was supported by the Homeowners. No direct testimony was taken by the Court from the Homeowners and only one issue raised in their motion was not addressed by the debtor in its testimony. This issue pertains to what amount the Homeowners would receive under the amended plan. "This third amended plan is reasonable [sic] calculated to afford this creditor (and other creditors) significantly more money upon its consummation than could be hoped to be obtained through a liquidation." We are of the opinion that the informed judgment of those most directly affected by the plan should be carefully weighed. *Horowitz v. Kaplan*, 193 F.2d 64, 72 (1st Cir.1951), *cert. denied*, 342 U.S. 946, 72 S.Ct. 561, 96 L.Ed. 704 (1952). Creditor Homeowners believe they would receive more under the Chapter 11 amended plan than they would receive in a Chapter 7 liquidation. This is a requirement of plan confirmation, 11 U.S.C. § 1129(a)(7)(A)(ii). We don't see how this creditor would receive more under the amended plan than in a liquidation. It is a secured unimpaired Class II creditor under the plan. It receives the benefit of being fully paid. There are enough assets to pay its secured claim. As a homeowners association it may have additional rights granted to it under Vermont law. Other unsecured creditors are not fortunate under this plan. The issue the Homeowners raised is not supported by the facts.

■ We agree with Judge Marro's findings of July 29, 1985. This Court cannot confirm the debtor's amended plan of reorganization because, simply stated, the plan will not happen as debtor has presented it. It does not satisfy 11 U.S.C. § 1129.

Now Therefore, upon the foregoing, it is ORDERED that:

1) Debtor's motion to reconsider Memorandum and Order dated July 29, 1985 is DENIED; and

2) Summit Association's motion to reconsider Memorandum and Order dated July 29, 1985 is DENIED.